THE STATE OF OHIO, APPELLEE, *v.* DUERING ET AL., APPELLANTS.

(Nos. 3578 and 3582—Decided February 10, 1971.)

104

*Mr. John W. Ergazos* and *Mr. Eugene P. Okey*, appellants.

*Mr. David D. Dowd, Jr.*, for appellee.

PUTMAN, J. These consolidated law appeals arise from sentences following convictions in a criminal trial where the two defendants, appellants herein, were jointly tried with a third who did not appeal.

The evidence adduced by the state showed that all three defendants belonged to an organization known as "the chosen few motorcycle club" and each wore the uniform of that club with "their colors" or arm patches. Dale Harden was known as "Dale the whale" and wore the club's "enforcer's star" on his uniform. The three traveled together to the Musical Inn in Stark County, Ohio, arriving at about 1:45 a. m. Friday, January 23, 1970.

Shortly thereafter violence erupted. Each defendant participated and each defendant used a weapon. Harden and Duering used heavy chains and Burwell a black jack and a beer bottle. Harden struck Jimmy W. Clay with the chain he, Harden, had been wearing as a belt. This chain had links with a distinctive "H" pattern.

Jimmy Clay received a fractured skull with 4 or 5 pieces of scalp pushing down into his brain. He received chain marks on the scalp, about the stomach and right arm. Glen L. Reid received mutiple lacerations of the scalp requiring 45 stitches and also received chain marks on the back and left thigh. Both victims received wounds of a distinctive "H" pattern.

The three defendants left together and were arrested about 25 hours later at approximately 3 a. m. wearing their distinctive uniforms and except for the beer bottle were in possession of the same weapons used at the Musical Inn the day before.

All three were jointly indicted January 23, 1970 on five separate counts. These were as follows:

(1) That they did with malicious intent to maim or disfigure, assault Jimmy W. Clay, with a dangerous instrument (R. C. 2901.19);

(2) The same as one except that the victim was Glen L. Reid;

(3) Assault Jimmy W. Clay with a dangerous weapon or instrument or by other means or force likely to produce death or great bodily harm (R. C. 2901.241);

(4) Same as three except that the victim was Glenn L. Reid; and

(5) Malicious destruction of property not their own over $100 in value (R. C. 2909.01).

No defense was presented by any defendant. All three were convicted and sentenced consecutively on counts three and four and acquitted on counts one, two and five.

Burwell did not appeal.

Harden and Duering appeal, assigning three errors as follows.

(1.) The court erred in charging the jury on the question of aiding and abetting.

(2.) The judgment is contrary to law.

(3.) The judgment is contrary to the manifest weight of the evidence.

Some of the assignments of error overlap and are in several parts. We turn to a separate consideration of each specifically alleged error.

I.

The general charge to the jury on aiding and abetting is the identical language used in part of a response to a question from the jury. This language is quoted in a later portion of this opinion.

The only objection to the charge was a general objection entered separately by each of the three defendants. No request was made for additional instructions and the jury retired to deliberate. The general charge was not reduced to writing.

After two hours of deliberation the jury sent a question to the court.

Whereupon the following occurred:

"The Court: Members of the jury, you have sent through the bailiff to me the following question: 'Was your instruction to the jury meant to advise that if one defend-

ant is guilty of maiming, all three defendants are guilty?'

"The court will go over the law as it pertains to aiding and abetting as I gave it in the general charge.

"The law of Ohio as it pertains to aiding and abetting is as follows: Any person who aids, abets, or procures another to commit an offense may be prosecuted and punished as if he were the principal offender.

"A person who knowingly and with criminal intent aids, abets or procures another to commit a crime or crimes is regarded as a principal in the crime or crimes and is equally guilty. This means that one who knowingly and with criminal intent aids, promotes, encourages, helps or obtains another, by act or by advice, to commit a crime or crimes is just as guilty as if he performed the criminal act himself.

"When two or more persons agree to commit an unlawful act and one does one part and the second person performs another part, those acting together are equally guilty of the crime or crimes. If any defendant knowingly joined or assisted others in the commission of the offense charged then, through such aiding and abetting, he is considered a principal and is guilty of such offense.

"If you find beyond a reasonable doubt that the crimes charged in the indictment were committed in the manner and form as charged, it is not necessary for you to find that the accused actually and personally committed the offenses, if you find the accused aided and abetted another person who actually committed the offenses and acted in concert with him with the intent and purpose of aiding and abetting such other person in the commission of such offense and in pursuance of a common design and purpose previously formed, or by an overt act on his part which showed he acted in concert with another in its commission.

"Ordinarily that person is regarded as the principal who performed the act complained of, and one who acts in concert with him, and with the purpose and intent to aid in the performance of the act and the commission of the offense, is an aider and abettor.

"Now, ladies and gentlemen, I would like to ask a

question. It is 15 minutes until 6:00. Is the jury interested in going out to dinner at this time before you resume your deliberations? Well, I don't know what the status of your deliberations are and I am not asking. It is a quarter of 6:00 and it will take 10 or 15 minutes to make arrangements. If you feel as though you would like to go out to dinner, we will make the arrangements. I see all of you nodding. Make the arrangements.

"Mr. Okey: Excuse me your Honor, may I approach the bench?

"Conference at the bench between the court and counsel off the record and out of the hearing of the jury.

"The jury left the courtroom to go to dinner at 5:48 p. m.

"Mr. Okey: Now comes the defendant Thomas F. Duering at 5:48 p. m. subsequent to the jury having been submitted this question to the Court, 'Was your instruction to the jury meant to advise that if one defendant is guilty of maiming, all three defendants are guilty?' The defendant Thomas F. Duering moves the court to repeat that portion of the original charge which was in substance that the jury was obligated to consider each individual count against each individual defendant before arriving at a decision. To repeat, the defendant Duering requests and moves the Court to repeat the original instructions respecting each individual defendant prior to further deliberation.

"Mr. Ross: Now comes the defendant Lawrence Burwell and specifically puts into this record that any instruction, further instruction given by the court to the jury is over the objection of the defendant Burwell. The defendant Burwell states that according to the question requested by the jury it calls for either a yes or no answer and that a 'no' answer was the proper answer under the law and the court should not have charged the jury on any aspect of the case and especially should not have charged on aiding and abetting because there was no question regarding aiding and abetting; and of course there was no evidence on aiding and abetting; and this question was

given by correspondence after the jury has deliberated for two and a half hours and this has prejudiced the rights of the defendant Burwell and the court still has not an-swered the question propounded by the jury.

"Mr. Ergazos: The defendant Earl D. Harden joins in the objection made by the defendant Lawrence Burwell as to instruction given by the court following receipt of the question by the jury which has placed undue emphasis on the charge of maiming in the indictment.

"Mr. Okey: Now comes the defendant Thomas F. Duering and also objects to the additional repetition of the charge with respect to aiding and abetting inasmuch as there was no credible evidence of any kind to indicate that this was an issue in the charges against Thomas Duering.

"The Court: Motions denied.

"*March 19, 1970, at 7:40 p. m.* the jury returned to the jurybox with all parties and counsel present in the courtroom.

"The Court: Members of the jury, after you submit-ted this written question to the court through the bailiff, the court explained the law to you as it applies to aiders and abettors—what an aider and abettor is under the law but in answer to your question, which is as follows: 'was your instruction to the jury meant to advise that if one de-fendant is guilty of maiming, all three defendants are guilty?', the court will answer the question this way. Yes, if you find that the other defendants are aiders and abet-tors in a commission of the crime of maiming or, no, if you find the other defendants were not aiders and abettors in a commission of the crime of maiming.

"The jury again retired to the juryroom for delibera-tions.

"Mr. Ergazos: Note an exception on behalf of the de-fendant Earl D. Harden to the reference by the court in answer to the question submitted by the jury as to the aiders and abettors in that there has been no evidence or representation on behalf of the state of Ohio as to any aiding and abetting."

We find no error in the court's response to the jury's question when considered in context with the entire record.

We find the evidence respecting all three defendants sufficient to warrant the giving of an instruction on aiders and abettors.

We find no error in the charge on aiders and abettors as given.

We find the verdict to be not contrary to law and not against the manifest weight of the evidence. We find overwhelming evidence of guilt to support the verdict against all defendants.

## II.

Where the court in a criminal action answers a question propounded by the jury with respect to certain counts of an indictment and the defendant is subsequently acquitted of the counts, an assignment of error charging that the court prejudicially invaded the province of the jury by telling them what their verdict should be is patently without merit.

## III.

The defendants take particular exception to that portion of the court's general charge which reads as follows.

''The state of Ohio claims that the three defendants acted together in the perpetration of these five crimes of which they are charged. It is claimed by the state that they aided and abetted one another in the commission of these crimes.''

Defendants complain that no such claim was made by the state in the indictment.

There was no request for a bill of particulars from any defendant.

It is our holding that R. C. 1.17 means literally what it says:

''Any person who aids, abets, or procures another to commit an offense may be prosecuted and punished as if he were the principal offender.''

The defendants could not possibly have been misled or otherwise prejudiced, in the absence of a bill of particulars expressly excluding that claim.

## IV.

Defendants make the separate claim that the evidence warranted no charge on aiders and abettors whatsoever.

They claim no evidence exists that any defendant agreed to aid or in fact aided or abetted any other. We do not agree.

We find an abundance of evidence in this record that the defendants displayed by their unequivocal overt conduct their agreement to commit the crimes of which they were convicted and that they each manifested an unequivocal malicious intent to act together intentionally to commit these crimes and in such a way as purposely to give encouragement to each other in the commission thereof.

A manifestation of assent to commit such gang violence can be and often is accomplished spontaneously and by overt act. Where this is shown no other agreement is necessary. Articles of conspiracy need not be signed. Prior meetings in smoke filled rooms are not required. However, a prior manifestation of assent is clearly demonstrated by an open and armed consortium, in a common uniform, which springs into a concert of personal violence promptly and simultaneously upon a given stimulus.

The totality of the circumstances including the fact that 24 hours later the same three defendants were together and armed as before eliminates every reasonable hypothesis of innocence.

## V.

The defendants claim, apart from their assigned errors and brief, that the trial court failed to charge the jury that malice was an element of the state's case on counts three and four. We find such a failure did not take place. Therefore we do not decide whether such a charge is required by the reason of rationale underlying the rule of *State* v. *Stout* (1892), 49 Ohio St. 270.

The thrust of defendants' argument is that if malice be judicially added to R. C. 2901.24, covering assault with intent to kill, when the statute does not contain the word malice, then the same requirement should be judicially engrafted upon the so-called assault with a deadly weapon statute (R. C. 2901.241). This record does not permit a decision upon that issue. The trial court here added malice to counts three and four.

This alleged error was neither assigned nor briefed.

Nor was any claim of such omission made to the trial court. This is easily understood. No such omission occurred.

It is not necessary for us to decide whether a failure judicially to amend the statute is erroneous because in this case the failure simply did not happen.

The trial court told the jury that one of the elements of the first two counts was "malicious intent." It said the following:

"Now the elements of the crime of maiming as it pertains to the first two counts of the indictment against these three defendants are as follows:

"1. That Jimmy W. Clay—this pertains to count No. 1—on or about January 23rd, 1970, was assaulted with a dangerous instrument by the defendants;

"2. That there was a malicious intent; and

"3. The element is to maim or disfigure; and

"4. The venue, that it happened in Stark County, Ohio.

"Now on this crime of maiming, one of the elements is that there must be malicious intent and the court at this time wishes to define to you what is meant by malice and what is meant by intent.

"Intent is a decision of the mind to knowingly do the specific act. The intent with which a person does an act is usually known only to himself unless he expresses it to others or indicates it by his conduct. That person is presumed to intend the reasonable and natural consequences of his voluntary acts unless his actions are otherwise explained by the evidence. The intent with which a person does an act is determined from the manner in which it is done, the means used and all the other facts and circumstances in evidence.

"The other element of the crime of maiming is that of malice. Malice is a state of mind which characterizes the doing of a wrongful or unlawful act intentionally or without legal justification or excuse. Ill will or hostility against the person of another are not required.

"The existence of malice is determined from the man-

ner in which the act is done, the means used and from all the other facts and circumstances in the evidence. Where one intentionally uses an instrument, a dangerous instrument, in a manner calculated to cause injury or death, you may infer that the act was done maliciously and unlawful means any act contrary to a criminal law of Ohio.''

Later, when dealing with the third and fourth counts the court told the jury:

''Again one of the elements of the crime of assault with a dangerous instrument or weapon is that of intent and the court has already given you the definition of intent and that definition and that element will also apply to the third and the fourth counts of the indictment which deal, as the court has indicated, with assault of these two men with a dangerous weapon or instrument.''

We find no error apparent upon the face of the record prejudicial to any substantial right of the appellants; no denial of any of their constitutional rights; that each had a fair trial; that the verdicts of the jury are not against the manifest weight of the evidence; and that the judgments are not contrary to law.

All three assignments of error are overruled.

*Judgment affirmed.*

VAN NOSTRAN, J., concurs.

RUTHERFORD, J., concurs with the findings made in the last two paragraphs of the opinion, including the overruling of all three assigned errors, and in the judgment which affirms the judgments of conviction and sentence rendered by the Common Pleas Court both as to the defendant Thomas F. Duering and the defendant Earl D. Harden.